1
2
3
4
5
6
7
8                  IN THE UNITED STATES DISTRICT COURT

9                 FOR THE EASTERN DISTRICT OF CALIFORNIA

10   ANTHONY TURNER,

11              Plaintiff,                No. 2: 09-cv-3445 GEB KJN P

12        vs.

13   WILLIAM G. DOUGLAS, et al.,          <u>ORDER AND</u>

14              Defendants.               <u>FINDINGS AND RECOMMENDATIONS</u>

15   _____/

16   I.  <u>Introduction</u>

17              Plaintiff is a state prisoner, proceeding without counsel, with a civil rights action

18   pursuant to 42 U.S.C. § 1983.  This action is proceeding on the amended complaint filed July 7,

19   2010, as to defendants Jencks, Douglas and Valentine.

20              Pending before the court are cross-motions for summary judgment.  After

21   carefully considering the record, the undersigned recommends that plaintiff's summary judgment

22   motions be denied and that defendants' summary judgment motions be granted.

23   II.  <u>Legal Standard for Summary Judgment</u>

24              Summary judgment is appropriate when a moving party establishes that the

25   standard set forth in Federal Rule of Civil Procedure 56(c) is met.  "The judgment sought should

26   be rendered  if . . . there is no genuine issue as to any material fact, and that the movant  is

1

1  entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

2         Under summary judgment practice, the moving party
3         always bears the initial responsibility of informing the district court
       of the basis for its motion, and identifying those portions of "the
       pleadings, depositions, answers to interrogatories, and admissions
4         on file, together with the affidavits, if any," which it believes
       demonstrate the absence of a genuine issue of material fact.
5

6  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  "[W]here the nonmoving party will bear the

7  burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made

8  in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on

9  file.'"  Id.  Indeed, summary judgment should be entered, after adequate time for discovery and

10  upon motion, against a party who fails to make a showing sufficient to establish the existence of

11  an element essential to that party's case, and on which that party will bear the burden of proof at

12  trial.  See id. at 322.  "[A] complete failure of proof concerning an essential element of the

13  nonmoving party's case necessarily renders all other facts immaterial."  Id. at 323.  In such a

14  circumstance, summary judgment should be granted, "so long as whatever is before the district

15  court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is

16  satisfied."  Id.

17         If the moving party meets its initial responsibility, the burden then shifts to the

18  opposing party to establish that a genuine issue as to any material fact actually exists.  See

19  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to

20  establish the existence of such a factual dispute, the opposing party may not rely upon the

21  allegations or denials of its pleadings, but is required to tender evidence of specific facts in the

22  form of affidavits, and/or admissible discovery material, in support of its contention that the

23  dispute exists.  See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11.  The opposing party

24  must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome

25  of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

26  (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.

1   1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could

2   return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433,

3   1436 (9th Cir. 1987).

4           In the endeavor to establish the existence of a factual dispute, the opposing party

5   need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the

6   claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

7   versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 630.  Thus, the "purpose of summary

8   judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a

9   genuine need for trial.'"  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory

10  committee's note on 1963 amendments).

11          In resolving a summary judgment motion, the court examines the pleadings,

12  depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

13  any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson,

14  477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the

15  court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.

16  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to

17  produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen

18  Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.

19  1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply

20  show that there is some metaphysical doubt as to the material facts . . .  Where the record taken

21  as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

22  'genuine issue for trial.'"  Matsushita, 475 U.S. at 586 (citation omitted).

23  III.  Discussion

24          A.  Background to Summary Judgment Motions

25          On June 13, 2011, plaintiff filed a ten page motion titled "Notice of Motion for

26  'Order' of Declaratory Judgment Against Defendant, et al."  (Dkt. No. 61.)  This motion states

3

1    plaintiff's claims against defendants, but includes no supporting evidence.  In this motion,

2    plaintiff fails to cite any portion of the record in support of his claims.

3            On June 18, 2011, defendants filed an opposition to plaintiff's June 13, 2011

4    motion, construing it as a motion for summary judgment.  (Dkt. No. 65.)  Defendants accurately

5    observe that, if anything, plaintiff's motion is a reiteration of his claims against defendants.

6    Defendants argue that plaintiff, as the moving party, failed to meet his initial burden of

7    demonstrating the absence of a genuine issue of material fact.

8            The undersigned agrees with defendants that plaintiff's June 13, 2011 "summary

9    judgment motion" is inadequate because it includes only a restatement of his claims with no

10   supporting evidence.  In this motion, plaintiff fails to meet his burden of identifying the portions

11   of the record which he believes demonstrate the absence of a genuine issue of material fact.  For

12   these reasons, plaintiff's motion filed June 13, 2011, construed as a summary judgment motion,

13   should be denied.

14           Pursuant to the mailbox rule, on July 18, 2011, plaintiff filed a motion titled

15   "Notice of Motion for Summary Judgment."  (Dkt. No. 68.)  All pretrial motions, including

16   summary judgment motions, were due on or before July 8, 2011.  (See Scheduling Order, Dkt.

17   No. 49.)

18           In their summary judgment motion, defendants incorrectly identified the date on

19   which plaintiff claimed that defendant Valentine allegedly provided plaintiff with inadequate

20   medical care.  (See defendants' summary judgment motion; Dkt. No. 62.)  On August 26, 2011,

21   the undersigned granted defendants twenty-one days to file a supplemental summary judgment

22   motion addressing the claim against defendant Valentine based on the date alleged in the

23   amended complaint.  (See August 26, 2011 order; Dkt. No. 71.)  Because defendants were

24   granted an opportunity to file a supplemental summary judgment motion, in the interests of

25   justice and judicial economy, the undersigned also found that plaintiff's July 14, 2011 summary

26   judgment motion was timely filed.  (Id.)

1   On September 15, 2011, defendants filed a supplemental summary judgment

2   motion addressing the claims against defendant Valentine.  (Dkt. 72.)  On September 15, 2011,

3   defendants also filed an opposition to plaintiff's second summary judgment motion.  (Dkt. No.

4   76.)

5          B.  Plaintiff's Claims

6          This action is proceeding on the amended complaint filed July 7, 2010 as to

7   defendants Jencks, Douglas and Valentine.   (Dkt. No. 27.)

8          Plaintiff alleges that on August 21, 2009, he suffered serious injuries as a result of

9   a car accident.  Plaintiff alleges that he had surgery at the U.C.D. Medical Center as a result of

10   the injuries he suffered in the car accident.  On September 18, 2009, plaintiff was arrested by

11   Yolo County sheriff's deputies and taken to jail.  Plaintiff alleges that the arresting officer used

12   excessive force by grabbing his broken arm and ripping off his knee brace.  When plaintiff

13   arrived at the jail, he was allegedly bleeding and in pain.

14          Plaintiff alleges that after being booked at the jail, he was placed in administrative

15   segregation.  Plaintiff alleges that on September 19, 2009, defendant Jencks, the Chief Medical

16   Officer Administrator of the jail, refused to process his requests for pain medications (i.e.,

17   oxycodone and percocet) and refused to change plaintiff's bandages.

18          Plaintiff alleges that on September 21, 2009, he saw defendant Dr. Douglas at the

19   jail.  Plaintiff claims that defendant Douglas told plaintiff that he would not provide plaintiff with

20   any of the pain medication prescribed by doctors at the U.C.D. Medical Center, i.e. oxycodone

21   and dilantin, where he had previously had surgery.  Plaintiff also claims that defendant Douglas

22   refused to change his dressings for his skin graft.  Instead, defendant Douglas allegedly

23   prescribed Vicodin even though plaintiff's chart stated that he was allergic to Vicodin.  Plaintiff

24   claims that defendant Douglas knew that plaintiff was allergic to Vicodin.

25          Plaintiff claims that on November 20, 2009, defendant Valentine refused to treat

26   plaintiff for a staph infection.  As a result, plaintiff allegedly suffered pain and injuries to his left

1  arm.

2          As legal claims, plaintiff alleges violations of the Eighth Amendment as well as

3  negligence in violation of state law.

4                  C.  Legal Standard for Eighth Amendment Claim

5          In order to state a § 1983 claim for violation of the Eighth Amendment based on

6  inadequate medical care, plaintiff must allege "acts or omissions sufficiently harmful to evidence

7  deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976).

8  To prevail, plaintiff must show (1) that his medical needs were objectively serious; and (2) that

9  defendants possessed a sufficiently culpable state of mind.  Wilson v. Seiter, 501 U.S. 294, 299

10 (1991); McKinney v. Anderson, 959 F.2d 853 (9th Cir. 1992) (on remand).  The requisite state of

11 mind for a medical claim is "deliberate indifference."  Hudson v. McMillian, 503 U.S. 1, 4

12 (1992).

13         A serious medical need exists if the failure to treat a prisoner's condition could

14 result in further significant injury or the unnecessary and wanton infliction of pain.  Indications

15 that a prisoner has a serious need for medical treatment are the following:  the existence of an

16 injury that a reasonable doctor or patient would find important and worthy of comment or

17 treatment; the presence of a medical condition that significantly affects an individual's daily

18 activities; or the existence of chronic and substantial pain.  See, e.g., Wood v. Housewright, 900

19 F. 2d 1332, 1337-41 (9th Cir. 1990) (citing cases); Hunt v. Dental Dept., 865 F.2d 198, 200-01

20 (9th Cir. 1989); McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992), overruled on other

21 grounds, WMX Technologies v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc).

22         In Farmer v. Brennan, 511 U.S. 825 (1994), the Supreme Court  defined a very

23 strict standard which a plaintiff must meet in order to establish "deliberate indifference."  Of

24 course, negligence is insufficient.  Farmer, 511 U.S. at 835.  However, even civil recklessness

25 (failure to act in the face of an unjustifiably high risk of harm which is so obvious that it should

26 be known) is insufficient.  Id. at 836-37.  Moreover, it is not sufficient that a reasonable person

1  would have known of the risk or that a defendant should have known of the risk.  Id. at 842.

2          It is nothing less than recklessness in the criminal sense—subjective

3  standard—disregard of a risk of harm of which the actor is actually aware.  Id. at 838-42.  "[T]he

4  official must both be aware of facts from which the inference could be drawn that a substantial

5  risk of serious harm exists, and he must also draw the inference."  Id. at 837.  Thus, a defendant

6  is liable if he knows that plaintiff faces "a substantial risk of serious harm and disregards that risk

7  by failing to take reasonable measures to abate it."  Id. at 847.  "[I]t is enough that the official

8  acted or failed to act despite his knowledge of a substantial risk of serious harm."  Id. at 842.  If

9  the risk was obvious, the trier of fact may infer that a defendant knew of the risk.  Id. at 840-42.

10 However, obviousness per se will not impart knowledge as a matter of law.

11         Also significant to the analysis is the well established principle that mere

12 differences of opinion concerning the appropriate treatment cannot be the basis of an Eighth

13 Amendment violation.  Jackson v. McIntosh, 90 F.3d 330 (9th Cir. 1996); Franklin v. Oregon,

14 662 F.2d 1337, 1344 (9th Cir. 1981).

15         However, a physician need not fail to treat an inmate altogether in order to violate

16 that inmate's Eighth Amendment rights.  Ortiz v. City of Imperial, 884 F.2d 1312, 1314 (9th Cir.

17 1989).  A failure to competently treat a serious medical condition, even if some treatment is

18 prescribed, may constitute deliberate indifference in a particular case.  Id.

19         Additionally, mere delay in medical treatment without more is insufficient to state

20 a claim of deliberate medical indifference.  Shapley v. Nevada Bd. of State Prison Com'rs, 766

21 F.2d 404, 408 (9th Cir. 1985).  Of note, although the delay in medical treatment must be harmful,

22 there is no requirement that the delay cause "substantial" harm.  McGuckin, 974 F.2d at 1060,

23 citing Wood v. Housewright, 900 F.2d 1332, 1339-40 (9th Cir. 1990), and Hudson, 503 U.S. at

24 4-6.  A finding that an inmate was seriously harmed by the defendant's action or inaction tends to

25 provide additional support for a claim of deliberate indifference; however, it does not end the

26 inquiry.  McGuckin, 974 F.2d 1050, 1060 (9th Cir. 1992).  In summary, "the more serious the

1  medical needs of the prisoner, and the more unwarranted the defendant's actions in light of those

2  needs, the more likely it is that a plaintiff has established deliberate indifference on the part of

3  the defendant."  McGuckin, 974 F.2d at 1061.

4          Superimposed on these Eighth Amendment standards is the fact that in cases

5  involving complex medical issues where plaintiff contests the type of treatment he received, or

6  lack thereof, expert opinion will almost always be necessary to establish the necessary level of

7  deliberate indifference.  Hutchinson v. United States, 838 F.2d 390 (9th Cir. 1988).  Thus,

8  although there may be subsidiary issues of fact in dispute, unless plaintiff can provide expert

9  evidence that the treatment he received equated with deliberate indifference thereby creating a

10  material issue of fact, summary judgment should be entered for the defendant.  The dispositive

11  question on this summary judgment motion is ultimately not what was the most appropriate

12  course of treatment for plaintiff, but whether the failure to timely give a certain type of treatment

13  was, in essence, criminally reckless.

14          D.  Defendant Jencks

15          As stated above, plaintiff alleges that on September 19, 2009, defendant Jencks

16  refused to process plaintiff's requests for pain medications (oxycodone and percocet) and refused

17  to change plaintiff's bandages.

18          Defendants move for summary judgment as to defendant Jencks on the grounds

19  that as  a Program Manager, she did not handle any requests for medication by plaintiff nor

20  provide any "hands on" patient care.  In support of their motion, defendants refer to the

21  declaration of defendant Jencks.  In relevant part, defendant Jencks states,

22          1.  I am a licensed Registered Nurse, licensed by the State of
           California as an R.N. in 2008; I am employed as the Program
23          Manager by the California Forensic Medical Group, Inc.
           ("CFMG"), the contract provider of health care services at the Yolo
24          County Jail and have been employed in this capacity since 2008.

25          2.  As the Program Manager, I am the custodian of the medical
           records for inmate patients at the Yolo County Jail, as well as
26          custodian of records for the records of nursing and mid level

medical providers (Nurse Practitioners and Physicians' Assistants) at the jail.

****

5.  As the Program Manager for CFMG at the Yolo County Jail since 2008, my duties in addition to being the custodian of medical records include the administrative duties necessary to insure that adequate staffing is maintained at the jail; in addition, I interact as needed with custodial staff and the office of the Sheriff to assist in the coordination of care for inmates and I receive, review and respond to medical grievances submitted by inmates at the jail.

6.  As an administrator I do not typically become involved in the hands on delivery of nursing care or clinical services for inmates; the only occasion on which I would perform clinical nursing functions would be if there were a problem scheduling nursing personnel sufficient to meet the staffing requirements at the jail.

7.  I understand that Mr. Turner has claimed in this suit that I refused to process a request for pain medication and refused to change his bandages or dressings.  These allegations are without any factual basis.  I never provided services for Mr. Turner and was never asked to provide any such services for him.  There was never any staffing shortfall that made it necessary for me to undertake any such services for Mr. Turner as alleged or at all.

8.  Further, I played no part in the receipt of or implementation of any order for medication for Mr. Turner; in addition, I did not institute any changes, additions, deletions or modifications for any orders of medication for Mr. Turner nor did I perform or refuse to perform any dressing changes for Mr. Turner.  All such dressing changes were performed by clinical nursing personnel pursuant to proper medical orders as reflected on Exhibit B, page 257....

(Dkt. No. 63 at 1-3.)

In his summary judgment motion plaintiff argues, in part, that defendant Jencks violated his rights by refusing to provide him with copies of his medical records.  Attached as an exhibit to plaintiff's motion is a copy of a petition for writ of mandate plaintiff filed in the Yolo County Superior Court on October 2009 requesting his medical records.  (Dkt. No. 68 at 18-25.) In the amended complaint, plaintiff raised a claim alleging that defendant Jencks violated his constitutional rights by denying him access to his medical records.  This claim was dismissed on the grounds that plaintiff did not make clear how his inability to gain access to these records

9

prevented him from obtaining adequate medical care or otherwise violated his constitutional rights.  (Dkt. No. 45.)  Accordingly, the undersigned will not address plaintiff's claims regarding his inability to obtain access to his medical records any further.

Plaintiff's  summary judgment motion contains no discussion of his remaining claims against defendant Jencks.  Attached as an exhibit to plaintiff's summary judgment motion is a copy of a memorandum by "Valerie Schnabel, Courtroom Clerk III."  (Dkt. No. 68 at 14.)  This memorandum states that, as directed by Judge Warriner, Ms. Schnabel contacted Lieutenant Rademaker at the Yolo County Jail regarding the medical care plaintiff was receiving.  (Id.)  The memorandum states that plaintiff's defense counsel, Ron Beede, had requested the court to direct the jail to attend plaintiff's medical needs for his arm.  (Id.)  According to the memorandum, plaintiff claimed that he had put in slips for medical attention that had not been responded to in the last two weeks.  (Id.)  The memorandum concluded that Lieutenant Rademaker informed Ms. Schnabel that plaintiff had been seen by medical staff and that he would ask the Medical Director to look into the complaints and forward a synopsis of treatment  he had received to the court. (Id.)  The only date on this memorandum is the handwritten date of "12/1/09," which appears to contain the initials of Ms. Schnabel.  (Id.)

Also attached to plaintiff's motion is a copy of a memorandum from defendant Jencks to Lieutenant Rademaker.  (Id. at 17.)  This memorandum is undated, although a handwritten note at the bottom states, "copy given to Mr. Beede 12/1/09."  This memorandum states,

> In response to your request, I reviewed the medical record for inmate Anthony Turner.  Review of his chart indicates that inmate Turner submitted a sick call request that he dated for 11-27-09 and a second request that he did not date.  Both requests were picked up and received by the medical department on 11-29-09 at 1500. Inmate Turner was already on the doctor's sick list for this week. Had he not been, he would have been scheduled for the sick call per his request.
>
> Inmate Turner is being seen on a regular basis by the medical doctor, nurse practitioner and nursing staff.  His chart is reviewed

1  by the doctor on an ongoing basis as well.  Inmate Turner is also
2  being followed routinely by our mental health department and
   psychiatrist.

3  Inmate Turner has been seen and evaluated in response to his
   multiple sick call requests.  Each appointment and follow up has
4  been scheduled in a timely manner consistent with the practices
   and protocols of the facility.  It should be noted that in the month
5  of November, inmate Turner submitted only the two above noted
   sick call requests.  These were submitted over the holiday and
6  weekend.  He was scheduled for very next doctor sick call visit and
   will be evaluated for his current concern.
7  (Id.)

8          These exhibits do not support plaintiff's claims that on September 19, 2009,

9  defendant Jencks refused to process plaintiff's requests for pain medications (oxycodone and

10 percocet) and refused to change his bandages.  No reasonable inferences can be made from these

11 exhibits in support of plaintiff's claims against defendant Jencks.

12         Plaintiff's  unverified opposition to defendants' summary judgment motion is,

13 largely, a restatement of his claims against defendants.  (Dkt. No. 66.)  Attached to the opposition

14 as exhibits are some entries from plaintiff's records at the jail as well as a grievance filed by

15 plaintiff while at the jail.  (Dkt. No. 66 at 17-28.)  These exhibits do not support plaintiff's claims

16 against defendant Jencks.

17         A verified complaint may be used as an opposing affidavit if it is based on

18 personal knowledge and sets forth specific facts admissible in evidence.  See Schroeder v.

19 McDonald, 55 F.3d 454, 460 & nn. 10-11 (9th Cir. 1995) (treating the complaint as an opposing

20 affidavit where plaintiff stated under penalty of perjury that contents of complaint were true and

21 correct).

22         Plaintiff's statements in his verified complaint do not adequately oppose

23 defendant Jencks's motion for summary judgment.  While plaintiff alleges that on September 19,

24 2009, defendant Jencks refused to process plaintiff's requests for pain medications (oxycodone

25 and percocet) and refused to change plaintiff's bandages, he offers no other facts in support of

26 these allegations.  Plaintiff does not allege, for example, how he made defendant Jencks aware of

1   his requests for medications and how he knows she refused to process them.  Plaintiff also does

2   not describe the circumstances under which defendant refused to change his bandages.

3          In her declaration, defendant Jencks states that she did not fail to process

4   plaintiff's requests for pain medication or refuse to change his bandages, and that providing such

5   care was generally not part of her duties.  Plaintiff's conclusory allegations in his amended

6   complaint, which do not address defendant Jencks' statement that she generally did not provide

7   medical care or process requests for medication, are not sufficient evidence on which a

8   reasonable jury could return a verdict in plaintiff's favor.  The fact that defendant Jencks

9   prepared a memorandum addressing the Yolo County Superior Court's concerns regarding

10  plaintiff's medical care in December 2009 does not support a claim by plaintiff that defendant

11  Jencks was directly involved in his medical care at the Yolo County Jail in September 2009.

12         Because defendant Jencks has provided adequate evidence demonstrating that she

13  did not provide the alleged inadequate medical care, which plaintiff has failed to adequately

14  oppose, the undersigned recommends that defendant Jencks be granted summary judgment.

15                      E.  Defendant Douglas

16         As stated above, plaintiff alleges that on September 21, 2009, he saw defendant

17  Dr. Douglas at the jail.  Plaintiff claims that defendant Douglas told plaintiff that he would not

18  provide plaintiff with any of the pain medication prescribed by doctors at the U.C.D. Medical

19  Center, i.e. oxycodone and dilantin, where plaintiff previously had surgery.  Plaintiff also claims

20  that defendant Douglas refused to change his dressings for his skin graft.  Instead, defendant

21  Douglas allegedly prescribed Vicodin even though plaintiff's chart stated that he was allergic to

22  Vicodin.  Plaintiff claims that defendant Douglas knew that plaintiff was allergic to Vicodin.

23         Defendants move for summary judgment on the grounds that defendant Douglas

24  did not provide plaintiff with inadequate medical care.  In support of this claim, defendants refer

25  to the declaration of Dr. John Levin who states, in relevant part,

26                      1.  I have been board certified in Emergency Medicine since 1991

                                        12

and have been a member of the  Emergency Medicine Committee at Arcadia Methodist Hospital as a [sic] well as a member of the Paramedic/Liason Advisory Committee.  In my practice I have lectured paramedics, nurses and medical students since 1986 with respect to emergency medicine and other topics.  I am familiar with and have been involved in the care and treatment of patients with traumatic injuries that have involved post-accident infections, lacerations, skin grafts for closure of such lacerations and the prescriptions of appropriate antibiotic therapy and pain medication as indicated.

2.  I have received and reviewed the jail medical charts from Yolo County Jail for Mr. Turner's incarceration in 2009, including the medical record reports and testing results for UC Davis Medical Center for Mr. Turner following his vehicular accident in 2009.

3.  Mr. Turner was brought to the UCD Medical Center emergency room by ambulance (referred to in this chart as "BIBA") following a reported rollover vehicular accident ("MVA") on August 21, 2009, at 8:32 a.m.  Mr. Turner had denied any loss of [consciousness] ("LOC") in the accident but complained of left arm pain and had a laceration with moderate associated bleeding from that extremity with worsening pain on movement. (Declaration of Jodel Jencks, R.N., Ex. A, UCD Emergency Room note dated 08/21/09, page 58.)

4.  The assessment by the emergency room providers at UCD on August 21, 2009, was that Mr. Turner had an open fracture of the distal left arm; the physicians were concerned with the associated bleeding.  Treatment was provided in the ER and a referral was made to the orthopedic service.  (Declaration of Jodel Jencks. R.N., Ex. B, page 60.)

****

7.  After referral to the orthopedic service at UCD, Mr. Turner had an open reduction and internal fixation of the left distal radius fracture with associated split thickness skin graft on August 27, 2009.  (Declaration of Jodel Jencks, R.N., Ex. A, UCD records, August 27, 2009, p. 56.)

8.  Following his discharge from UCD Medical Center on August 27, 2009, Mr. Turner came back to the UCD emergency room on September 12, 2009, complaining of increased pain in his arm with reported occasional draining from the wound.  He was noted not to have been compliant with the earlier UCD order for dressing changes.  Mr. Turner's white blood cell count was 6.7 (within normal range) a finding that does not support any claim by Mr. Turner that he was suffering from an infection in the arm. (Declaration of Jodel Jencks, R.N., Ex. A, UCD records, p. 37.)

9.  An x-ray taken on Mr. Turner's return to the UCD Medical Center showed adequate alignment of the fracture as well as no sign of any infection associated with the broken bones, i.e., there was no evidence of any osteomyelitis.  (Declaration of Jodel Jencks, R.N., Ex. A, UCD medical records, p. 37.)

10.  The assessment by the UCD physicians on September 12, 2009, was that "an infection is not likely given the laboratory parameters, [the] unimpressive clinical presentation and negative CT with  contrast and the patient was urged to keep the following appointment with the Orthopaedic outpatient service at UCD. (Declaration of Jodel Jencks, R.N., Ex. A, UCD records, p. 37.)

11.  Mr. Turner was noted on September 13, 2009, to have reported no medical allergies to the medical staff at UCD.  (Declaration Jodel Jencks. R.N., Ex. A, UCD records, p. 45-46.)

12.  Blood cultures taken at UCD upon the patient's return in September 2009, were read showing "no growth" of any infective organism after 5 days of culture.  (Declaration of Jodel Jencks. R.N., Ex. A, UCD records, p. 49.)

13.  Mr. Turner was medically screened at the Yolo County Jail on September 18, 2009, at 0320 hours.  (Declaration of Jodel Jencks, R.N., Exhibit B, CFMG medical file,pp. 09, 162.)

14.  A check for current medication prescription for Mr. Turner at the time of his intake at the Yolo County Jail was made on September 18, 2009; the following pharmacies indicated that had no active prescriptions save and except for Oxycodone prescriptions: Raleys, Rite Aide, Longs, and Walgreens. (Declaration of Jodel Jencks, R.N., Ex. B, pp. 09, 162.)

15.  On examination at the Yolo County Jail on September 18, 2009, the dressing on the left arm was changed with the observation of scabbing and "scant" drainage; pain medications were ordered (Ultram) and the dressing was changed with a follow up the nurse practitioner ordered as well.  (Declaration of Jodel Jencks, R.N., Ex. B, pp. 33, 161.)

16.  On September 21, 2009, Mr. Turner was seen by the Mid-level provider at the Yolo County Jail and Mr. Turner reported that Ultram and Ibuprofen provided for pain were not working.  Mr. Turner also stated that he was not allergic to Ibuprofen, but was allergic to the "plastic coating" on the Ibuprofen.  Mr. Turner was referred to Dr. Douglas.  (Declaration of Jodel Jencks, R.N., Ex. B, CFMG records, p. 161.)

17.  Dr. Douglas requested, received, and reviewed the UCD chart relating to Mr. Turner's care on September 21, 2009, and noted the absence of any diagnosed infections at the time of the patient's

14

release from UCD.  (Declaration of Jodel Jencks. R.N., Exhibit B, p. 160.)

18.  On September 25, 2009, Dr. Douglas examined the patient, Mr. Turner, and received the report by Mr. Turner that the plate and screws inserted by the orthopedics were, in Mr. Turner's view, "infected."  Mr. Turner also requested Ultram be replaced for pain control by Norco.  Dr. Douglas following an exam of the patient found no clinical evidence of any infection and that the graft site scar was well healed and without exudate.  Dr. Douglas changed the prescription of Ultram to Vicodin.  (Declaration of Jodel Jencks, R.N., Ex. B, CFMG records, p. 159-160.)

19.  The records for Mr. Turner's medical care during his incarceration at the Yolo County Jail in 2009, reflect and confirm that he was prescribed and used Vicodin without problem or incident, including the absence of any allergic reaction in 2009. (Declaration of Jodel Jencks, R.N., Ex. B, pp. 32, 138, 139.)

20.  On September 27, 2009, Mr. Turner reported at the time of a medical re-admission screening that he had been taking Vicodin and that the Vicodin had been effective in reducing his pain from a reported level of 7/10 to 5/10.  Mr. Turner also indicated at that time that he was allergic to Codeine.  (Declaration of Jodel Jencks. R.N., Ex. B, p. 6.)

21.  Daily dressing changes were ordered and performed from September 18, 2009, through September 25, 2009 (Declaration of Jodel Jencks, R.N., Ex. B, p. 257); ...

22.  Based on my review of the medical chart from UCD Medical Center and the CFMG records, the care provided by Dr. William Douglas, M.D. ... complied with the applicable standard of care with  which I am familiar as a practicing physician in this state with particular training and experience in treating patients with traumatic injuries including lacerations and broken bones.

(Dkt. No. 64 at 1-7.)

Plaintiff's  summary judgment motion restates his claims against defendant Douglas.  The exhibits attached to plaintiff's motion do not support plaintiff's claims against defendant Douglas.  Although, as discussed above, on or around December 1, 2009, the Yolo County Superior Court requested information from the jail regarding plaintiff's medical care, it is not reasonable to infer from this request and the memorandum defendant Jencks prepared in response, that defendant Douglas provided inadequate medical care in September 2009.

15

1          Plaintiff's  unverified opposition to defendants' summary judgment motion is,

2  largely, a restatement of his claims against defendants.  (Dkt. No. 66.)  Attached to the opposition

3  as exhibits are some entries from plaintiff's records at the jail as well as a grievance filed by

4  plaintiff while at the jail.  (Dkt. No. 66 at 17-28.)  These exhibits do not support plaintiff's claims

5  against defendant Douglas.

6          Also attached as exhibits to plaintiff's amended complaint are medical records

7  which appear to be from the U.C.D. Medical Center.  These medical records do not support

8  plaintiff's claims against defendant Douglas.

9          The undersigned first considers plaintiff's claim that defendant Douglas

10  prescribed Vicodin to him, despite having knowledge that plaintiff was allergic to Vicodin.

11  Defendants argue that plaintiff was not allergic to Vicodin, and the medical records they provide

12  support this claim.  While plaintiff told Yolo County Jail staff that he was allergic to Codeine, he

13  did not report that he was allergic to Vicodin.  The medical records provided indicate that

14  plaintiff took the Vicodin without experiencing an allergic reaction.  Plaintiff has provided no

15  evidence refuting defendants' evidence that he was not allergic to Vicodin.

16          On September 29, 2011, plaintiff filed an unverified reply to defendants'

17  opposition to his second summary judgment motion.  (Dkt. No. 78.)  Plaintiff argues that

18  defendant Douglas knew that he was allergic to Vicodin because it was discontinued after

19  plaintiff became sick.  Plaintiff also seems to argues that defendant knew of his Vicodin allergy

20  because defendant was aware that plaintiff was allergic to codeine, and that anyone allergic to

21  codeine is allergic to Vicodin.  Attached to plaintiff's reply is a page from his medical records

22  from the Yolo County Jail not previously provided by either party.  This undated form, dated

23  September 18, 2008, is labeled "Problem List."  (Id. at 14.)  This form states that plaintiff is

24  allergic to Tylenol with codeine, Vistaril and the coating of Motrin.  (Id.)

25          Plaintiff has presented no evidence, expert or otherwise, demonstrating that

26  someone who is allergic to codeine must also be allergic to Vicodin.  The undersigned may also

1  not consider plaintiff's unverified statement in his reply that he got sick after taking Vicodin.

2  Plaintiff has also provided no medical records  indicating that the Vicodin made him sick and

3  that it was discontinued.  Even if the Vicodin was discontinued because it made plaintiff sick,

4  plaintiff has not demonstrated that defendant Douglas had any knowledge that plaintiff was

5  allergic to Vicodin when he prescribed it.

6        Because there is no evidence that plaintiff was allergic to Vicodin or, assuming he

7  had a Vicodin allergy, that defendant Douglas was aware of this allergy, defendant Douglas

8  should be granted summary judgment as to this claim.

9        The undersigned next considers plaintiff's claim that defendant Douglas refused

10  to prescribe the pain relievers that had been prescribed to plaintiff at the U.C.D. Medical Center,

11  i.e., oxycodone and dilantin.  Although defendants generally argue that defendant Douglas did

12  not provide inadequate medical are, their summary judgment motion does not specifically

13  address this claim.

14        Defendants' evidence indicates that upon plaintiff's arrival at the jail on

15  September 18, 2009, a check of plaintiff's prescriptions indicated that he had prescriptions for

16  oxycodone at several pharmacies.  (Dkt. No. 63-2 at 11.)  On that date, at the jail plaintiff was

17  prescribed Ultram for pain by someone in the jail medical department other than defendant

18  Douglas.  (Id. at 4.)  On September 21, 2009, plaintiff complained that the Ultram and ibuprofen,

19  prescribed for pain, were not working.  (Id. at 10.)  Plaintiff was then referred to defendant

20  Douglas.  (Id.)  On September 25, 2009, defendant Douglas discontinued the Ultram and instead

21  prescribed  Vicodin.  (Id. at 3.)  According to Dr. Levin, on this date plaintiff also requested

22  Norco for pain.  The undersigned cannot find this entry in the medical records provided.  On

23  September 27, 2009, plaintiff reported that the Vicodin had reduced his pain from 7/10 to 5/10.

24  (Id. at 1.)

25        Plaintiff's summary judgment motion and opposition to defendants' summary

26  judgment motion contains no evidence supporting this claim against defendant Douglas.

1  Plaintiff's verified amended complaint contains only his allegations against defendant Douglas.

2  The exhibits attached to the amended complaint do not support this claim.

3  Defendants' evidence demonstrates that defendant did not fail to treat plaintiff's

4  pain.  The Vicodin prescribed by defendant reduced plaintiff's pain from 7/10 to 5/10.  Plaintiff

5  has offered no expert evidence that the previously prescribed pain medications, i.e., oxycodone

6  and dilantin, would have more effectively treated his pain.  At most, the record demonstrates a

7  difference of opinion between defendant Douglas and the doctors at the U.C.D. Medical Center

8  regarding what pain medicine plaintiff should receive.

9  Because the record demonstrates that defendant Douglas did not act with

10  deliberate indifference to plaintiff's medical needs when he failed to prescribe oxycodone and

11  dilantin for plaintiff's pain, and instead prescribed Vicodin, defendant Douglas should be granted

12  summary judgment as to this claim.

13  Finally, plaintiff argues that Douglas refused to change plaintiff's dressings for his

14  skin graft, apparently on or around September 21, 2007.   Other than his conclusory allegation in

15  the amended complaint, plaintiff offers no evidence to support this claim.

16  Defendants' evidence indicates that plaintiff's dressing was changed daily on

17  September 18, 2008, September 19, 2009, September 20, 2009, September 22, 2009, September

18  23, 2009, September 24, 2009, and September 25, 2009, by jail medical staff personnel.  (Dkt.

19  No. 63-2 at 12.)  The dressing was not changed on September 21, 2009, because plaintiff was at

20  an appointment regarding parole.  (Id.)

21  When defendant Douglas saw plaintiff on September 25, 2009, he did not change

22  plaintiff's dressings.  However, the record indicates that someone else at the jail changed

23  plaintiff's dressing on that date, as well as on the other dates listed.  An entry in plaintiff's

24  medical records from September 25, 2009, states that the dressing changes were to be

25  discontinued; instead, plaintiff was given padding for use under his splint.  (Id. at 3.)  Based on

26  this record, the undersigned cannot find any evidence supporting plaintiff's claim that defendant

1  Douglas acted with deliberate indifference by failing to change plaintiff's dressing in September

2  2009.  Accordingly, defendant Douglas should be granted summary judgment as to this claim.

3          F.  Defendant Valentine

4          Plaintiff claims that on November 20, 2009, defendant Valentine refused to treat

5  plaintiff for a staph infection.   As a result, plaintiff allegedly suffered pain and injuries to his left

6  arm.

7          Defendants move for summary judgment as to defendant Valentine on grounds

8  that plaintiff did not have a staph infection or any infection while incarcerated at the Yolo County

9  Jail in November 2009.  In support of this claim, defendants refer to the supplemental

10  declarations of Jodel Jencks and Dr. Levin.  In her supplemental declaration Jodel Jencks states,

11  in relevant part,

12          3.  The records relating to the days worked by Nurse Valentine
            indicate that he worked the night shift starting on November 19,
13          2009, and ending at 0800 hours on November 20, 2009.  Mr.
            Valentine did not return to work at the Yolo County Jail until
14          November 24, 2009.

15          4.  The records for Mr. Turner indicate that a Progress Note was
            written by Jose Valentine at 0445 hours (i.e., 4:45 a.m.) on
16          November 20, 2009.  The note, (Exhibit A) indicates that Mr.
            Turner wanted to be "assessed" during medication rounds for a
17          "self-diagnosis of facial staph infection."  The note continues and
            indicates that Mr. Turner was advised by Nurse Valentine that the
18          nurse "does not stop medication pass for sick call on non-emergent
            assessments" and that Mr. Turner "was advised to submit a pink
19          slip for S.C. [sick call] as previously informed by custody. [The]
            IM [inmate] became upset."
20
            5.  Attached hereto as Exhibit B are page 025, 026, 027, 028, 029,
21          030, 031, 101, 102, 103, 104, 105, 116, 117, 132, 134, 135, 136,
            137, 138, 139, 154, 155, 157, 158, and 209.  These pages are true
22          and correct copies of medical records contained in the Yolo County
            Jail CMFG medical chart for Mr. Anthony Turner.  These records
23          document the care and treatment and pertinent orders relating to
            Mr. Anthony Turner through December 14, 2009, and confirm that
24          there was no medical order by the physician or intermediate
            provider confirming the presence of any "steph infection," the
25          suspicion of any staph infection, or any infective process at all for
            this patient.  Further there were no orders for any nursing treatment
26          of any such infective process since no such infection had been

1    diagnosed.

2    6.  Mr. Turner was scheduled on November 20, 2009 (Exhibit B, page 28); for physician's sick call on November 30, 2009; on

3    November 24, 2009 (Exhibit B, pages 26 and 27), Mr. Turner was seen by the mental health provider, Dr. Zil, the psychiatrist

4    providing care at the jail and on December 1, 2009 (Exhibit B, page 27) the physician sick call set for November 30, 2009, was

5    put over to December 4, 2009.  On December 4,2009, Mr. Turner was seen on physician's sick call (Exhibit B, pages 154, 155) and

6    requesting, among other items, "5) 'I need an antibiotic for whatever ails me.'"  An order for blood lab work was issued

7    including a complete blood count ("CBC") and urine analysis with a culture, among other tests (Exhibit B, page 27).  The tests

8    ordered on December 4, 2009, were refused by plaintiff on December 6, 2009 (Exhibit B, pages 154 and 209).  The blood

9    draw was ordered discontinued on December 8, 2009 (Exhibit B, page 27) following the refusal by Mr. Turner but the lab work was

10    reinstated December 19, 2009 (Exhibit B, page 27).

11    7.  The lab results for the testing ordered on December 19, 2009 were returned on December 19, 2009 (Exhibit B, p. 105) for the

12    urinalysis, December 20, 2009 (Exhibit B, p. 104) for the urine culture), and December 22, 2009 (Exhibit B, p. 109) for the blood

13    work.

14  (Dkt. No. 73 at 2-3.)

15    In his supplemental declaration Dr. Levin states, in relevant part,

16    3.  The records from the Yolo County Jail in October, November 2009 and December 2009, contain no order by any physician or

17    intermediate provider (P.A. or F.N.P.) directing treatment by nursing staff for any claimed "staph" infection (Supplemental

18    declaration of Jodel Jencks, R.N., Exhibit A and B).  No such order is in the records because there is no indication that Mr. Turner had

19    a "staph" infection or any infection that needed treatment during his incarceration at jail.

20

21    4. Following the refusal of ordered lab tests including a complete blood count and urinalysis with culture on December 4, 2009

22    (Supplemental Declaration of Jencks, Exhibit B, page 027), Mr. Turner did allow blood to be drawn on December 19, 2009

23    (Supplemental declaration of Jencks, Exhibit B, page 027) and the lab work and urinalysis were returned indicating there was no

24    infection present in the blood or urine.  (Declaration of Jencks, Exhibit B, pp. 102, 104 and 105.)  Simply put there was no staph

25    infection as had been reportedly "self diagnosed" by Mr. Turner when he saw Nurse  Valentine at pill pass on the early morning

26    hours of November 20, 2009 (Supplemental Declaration of Jencks, Exhibit A).

20

5.  Earlier lab tests at the jai returned on November 11, 2009 (Supplemental Declaration of Jencks, Exhibit B, p. 116), and October 23, 2009 (Supplemental Declaration of Jencks), Exhibit B, p. 117) also had white blood cell counts within normal limits, indicating the absence of any infection in the patient, i.e., a normal white blood count is evidence that there was no infective process in the plaintiff's body causing the body to produce higher than normal numbers of white blood cells to counteract an infection.

(Dkt. No. 74 at 2-3.)

Plaintiff did not file an opposition to defendants' supplemental summary judgment motion addressing the claims against defendant Valentine.  Instead, plaintiff filed a request for judicial notice.  (Dkt. No. 77.)  In this pleading, plaintiff requests that the court take judicial notice of testimony he gave in federal court regarding a beating of an inmate at the California Medical Facility.  This testimony is not relevant to the instant action.  Plaintiff's opposition to defendants' first summary judgment motion also contains no evidence addressing this claim against defendant Valentine.  Plaintiff's summary judgment motion restates his claim against defendant Jencks.  The exhibits attached to plaintiff's summary judgment motion do not support his claim against defendant Jencks.

The only evidence supporting plaintiff's claims against defendant Valentine are his statements in his verified complaint and summary judgment motion that defendant Valentine refused to treat him for a staph infection in November 2009.  Plaintiff has not otherwise addressed defendants' evidence demonstrating that he did not have a staph infection in November 2009.  Because plaintiff is not a medical expert, his claim that he had a staph infection is not admissible.  Considering defendants' evidence demonstrating that plaintiff did not have staph infection, plaintiff's unsupported claim that he had a staph infection in November 2009 is not sufficient evidence on which a reasonable jury could return a verdict in plaintiff's favor.  For these reasons, defendant Valentine should be granted summary judgment.

IV.  Final Matters

Plaintiff has also alleged state law claims against defendants.   Where a district

21

1  court has dismissed all claims over which it has original jurisdiction, it may decline to exercise

2  supplemental jurisdiction over remaining state law claims.  28 U.S.C. § 1367(c) (3); United Mine

3  Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966) ("[P]endent jurisdiction is a doctrine of

4  discretion, not of plaintiff's right.").

5          When deciding whether to exercise supplemental jurisdiction, the court considers

6  judicial economy, convenience and fairness to litigants, and comity with state courts.  Gibbs, 383

7  U.S. at 726.  Where federal claims have been dismissed, the balance of factors usually tips in

8  favor of declining to exercise jurisdiction over the remaining state law claims and dismissing

9  them without prejudice.  Gini v. Las Vegas Metro. Police Dep't., 40 F.3d 1041, 1046 (9th Cir.

10  1994).  Having found that defendants should be granted summary judgment as to plaintiff's

11  Eighth Amendment claims, the undersigned declines to exercise supplemental jurisdiction over

12  plaintiff's remaining state law claims

13          In his opposition to defendants' summary judgment motion, plaintiff requests the

14  appointment of counsel and an expert witness.

15          The United States Supreme Court has ruled that district courts lack authority to

16  require counsel to represent indigent prisoners in § 1983 cases.  Mallard v. United States Dist.

17  Court, 490 U.S. 296, 298 (1989).  In certain exceptional circumstances, the court may request the

18  voluntary assistance of counsel pursuant to 28 U.S.C. § 1915(e)(1).  Terrell v. Brewer, 935 F.2d

19  1015, 1017 (9th Cir. 1991); Wood v. Housewright, 900 F.2d 1332, 1335-36 (9th Cir. 1990).  In

20  the present case, the court does not find the required exceptional circumstances.  Therefore,

21  plaintiff's request for the appointment of counsel is denied.

22          Appointment of an expert witness is not warranted in this case.  Fed. R. Evid. 606

23  (court has authority to appoint expert witness).  Based on defendants' persuasive evidence,

24  combined with the lack of evidence in plaintiff's favor, the undersigned finds that it is not likely

25  that an expert witness would assist the court in evaluating plaintiff's claims.

26          On August 3, 2011, plaintiff filed a motion for default judgment.  (Dkt. No 69.)

In this motion, plaintiff argues that defendants should be sanctioned for failing to respond to his discovery requests.  Plaintiff also argues that defendants did not timely respond to the summons.  On August 9, 2011, defendants filed an opposition to this motion.

Plaintiff's motion alleging that defendants failed to respond to discovery requests is, in essence, a motion to compel.  Pursuant to the December 30, 2010 scheduling order, the discovery  cut-off date was April 15, 2011.  (Dkt. No. 49.)  The portion of plaintiff's motion for default construed as a motion to compel is denied as untimely.

The undersigned next considers the motion for default.  On November 9, 2010, all three defendants filed waivers of service stating that their responses to plaintiff's amended complaint were due within sixty days of October 26, 2010.  (Dkt. Nos. 42, 43, 44.)  On December 22, 2010, defendants filed an answer to the complaint.  Because defendants' answer was filed within sixty days of October 26, 2010, they are not in default.

Accordingly, IT IS HEREBY ORDERED that:

1.  Plaintiff's motion for appointment of counsel and an expert witness (Dkt. No. 66) is denied;

2.  Plaintiff's motion for default judgment (Dkt. No. 69) is denied; and

IT IS HEREBY RECOMMENDED that:

1.  Plaintiff's motions for summary judgment (Dkt. Nos. 61 and 68) be denied;

2.  Defendants' motions for summary judgment (Dkt. Nos. 62 and 72) be granted.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed and served within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to

appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED:   October 24, 2011

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

tur3445.sj